THE STATE, ANNA R. WARE AND HENRY G. COOPER, PROSECUTORS, v. THE MAYOR, &c., OF RUTHERFORD.

1. Under the statutes relating to street improvements in the borough of Rutherford (*Pamph. L.* 1883, *p.* 49 ; 1886, *p.* 122; 1887, *p.* 126 ; 1888, *p.* 226) there exists no power and authority in the mayor and council, except by ordinance, to establish the grade of any of the streets or highways within the limits of the borough.

2. It is an essential element of laches that the party charged with it should have knowledge of the facts constituting his title to relief, or have failed or omitted to obtain such knowledge, when it was obtainable, or that there should be circumstances which should have induced an inquiry and an effort to obtain knowledge.

On *certiorari.*

Argued at February Term, 1893, before Justices DEPUE and LIPPINCOTT.

For the prosecutors, *Addison Ely.*

For the defendants, *Copeland & Luce.*

The opinion of the court was delivered by

LIPPINCOTT, J.   By the writ of *certiorari* in this case the proceedings of the mayor and council of the borough of Rutherford, to adopt a grade for Sylvan street in the borough are certified into this court for review.

The contention in relation to the grade of Sylvan street arises on the part of the street extending from the point where Passaic avenue intersects the street on the south, thence northerly to Park avenue, and more particularly that portion between Passaic avenue and the street known as the Terrace. This part is called the hill, and ascends from Passaic avenue to the summit and thence descends to Park avenue, which lies to the north of the Terrace.

There exists no dissatisfaction with the grade on any other portion of the street.

The prosecutors contend that the proceedings by which the grade was adopted or established are without warrant of law, and therefore illegal, and should be set aside; and that the work of grading the street is not progressing on that part of Sylvan street between Passaic and Park avenues in accordance with the grade heretofore established and adopted by agreement between the prosecutors and the mayor and council of the borough.

The first question presented is whether the mayor and council can legally establish a grade in any other manner than by ordinance.   It is contended, on the part of the prosecutors, that the grade of Sylvan street was never adopted by ordi-

nance, and that no grade of any street in the borough can be established or adopted otherwise.

This contention requires an examination of such statutes relative to the matter as have been noticed and considered in the arguments and briefs of counsel.

By an act of the legislature of this state, entitled "A supplement to an act entitled 'An act for the formation of borough governments,'" approved April 3d, 1878, supplement approved March 13th, 1883 (*Pamph. L., p.* 49), general supervision is given to the mayor and council over the streets, avenues, roads, public places and sidewalks in the borough, and grants power to them to accept unaccepted streets after the same shall have been first opened, worked and graded in conformity to the grade established thereon by the mayor and council, &c.

The third section of the act provides " that the mayor and council shall have authority to provide by ordinance for the grading, construction, repairing and keeping in repair all such accepted streets."

If this act authorizes the mayor and council to establish the grade of any street, it authorizes it to be done only by ordinance by the mayor and council of the borough. There is no authority conferred to establish the grade by any other method.

By a further supplement approved March 26th, 1886 (*Pamph. L., p.* 122), it is provided that " it shall be lawful for the mayor and council of any borough to make and establish ordinances for ascertaining and establishing the grades and boundaries of all streets, avenues, alleys and sidewalks therein."

The next act in order .cited is a further supplement to the act of 1878, approved April 1st, 1887 (*Pamph. L., p.* 126), the first section of which provides that " the mayor and council, under the act to which this is a further supplement, shall have power and authority, *by ordinance,* to order and cause any street, road or avenue, &c., *   *   *   to be graded *   *   *   in such manner as they may deem advisable ; *pro-*

*vided,* application in writing, signed by the owners of at least one-half the lineal feet of land fronting on the proposed improvement, be first presented to the mayor and council."

The only other act to which attention has been directed is a further supplement, approved March 23d, 1888. *Pamph. L., p.* 226.

The first section of this act provides that " the mayor and council shall have power and authority, by ordinance, to lay out, open, extend, alter, make, straighten and vacate streets, roads, avenues and highways, whether the same be dedicated or otherwise obtained, to or for public use, and also to grade, pave, gravel, &c.; * * * *provided, however,* that the application, in writing, describing the nature, kind and extent of the work or improvement desired, signed by the owners at least of one-quarter of the lineal feet of land fronting on the street, avenue, road, &c., * * * proposed to be opened, laid out, extended, altered, * * * graded, * * * or otherwise improved, be first presented to the mayor and council."

By section 3 of the act of 1887 (at *p.* 126), it is provided that after the passage of the ordinance provided for by that act any and all further acts and proceedings necessary to complete the establishment contemplated by the ordinance could be taken by resolution, and it was decided in *Meday et al.* v. *The Mayor of Rutherford,* 23 *Vroom* 499, that where the improvement of a highway had been inaugurated by ordinance under the act of 1887, a change of grade may be lawfully effected by resolution.

This decision was a construction of the act of 1887. The act of 1888 contains no provision similar to section 3 of the act of 1887. The act of 1888 provides that all proceedings to alter a street or to grade it must be by ordinance, to be enacted only upon an application of a certain proportion of the owners of land fronting upon the improvement, and it may become a question upon the construction of this act of 1888 whether an alteration of grade can, in any event, be accom-

plished by resolution, without the consent of the property owners.

Whether the grade of a street can be established, independently of an application, as provided by the acts of 1887 and 1888, is not now a question necessary to determine, but it is certain that upon the legislation under consideration boroughs have no power and authority, except by ordinance, duly enacted by the mayor and council, to establish the grade of any of the streets or other highways within their limits. This certainly is the necessary interpretation of these statutes whenever the legality of the proceeding of the mayor and council in relation to this matter is directly called in question.

It nowhere appears in this case that the grade of Sylvan street was established by ordinance; on the contrary, it appears by the return and the evidence that the grade was not so established. It is also conceded that no ordinance was ever enacted by the mayor and council of the borough establishing such grade.

Now, this being so, ordinarily, it would be needless to go further. It would follow, necessarily, that the proceedings of the mayor and council for the grading of Sylvan street would be set aside.

But in this case the defendants charge the prosecutors with laches in prosecuting their rights in this matter.

It is an essential element of laches or negligence that the party charged with it should have knowledge of the facts constituting his title to relief, or have failed or omitted to obtain knowledge when it was obtainable, or that there should be circumstances which should have induced an inquiry and an effort to obtain knowledge.

The defendants contend that the prosecutors waited until considerable progress had been made in the work of the improvement, and in order to sustain their contention of laches they allege that the prosecutors had knowledge that the work was to be done, and was being done, according to the map of the grade as adopted by resolution or otherwise by the mayor and council, of which they now complain; that the prosecu-

tors had actual knowledge, before the work of the improvement commenced; that the mayor and council, by the resolution of August 3d, 1891, established the grade by which the improvement through the property of the prosecutors is now intended to be made, and that such grade is shown on the said map; and that, by not objecting then, or before the work was commenced, and by waiting until much progress was made in the improvement, they waived the irregularity of the adoption of the map, and are now in laches and estopped from a review of the proceedings of the defendants.

If this contention be true as matter of fact, the conclusion would be unavoidable.

Therefore, it is important to determine whether these facts are true, and this determination involves an examination of the proceedings of the mayor and council as well as the evidence which has been submitted.

An inspection of the return to the writ develops the fact that no grade of Sylvan street was ever adopted or established by any ordinance of the mayor and council of the borough of Rutherford. From the return it appears, on May 25th, 1891, the street committee recommended that grade maps be furnished for Spring Dell and for Sylvan street, from Park avenue to Pierrepont avenue, which includes the part of Sylvan street in which the disputed grade occurs. This recommendation was referred to the street committee with power. There is no information in relation to the action of the committee on the subject. It is fair to presume they did something in relation to it, for July 24th, 1891, a petition signed by the prosecutors and other owners of property on Sylvan street, on the line of the proposed cut *through the hill* on Sylvan street, objecting to the grade map made by Messrs. Wise & Watson, was presented at the meeting of July 6th, 1891, although the minutes of the meeting of July 6th, 1891, do not show any reference to the matter. Notice was given at the meeting of July 24th, 1891, that profile maps would come before the meeting of August 3d, 1891, and that all persons interested

in the matter were notified to attend at that time. On August 3d, 1891, the objection was read to the cut through the hill, and a discussion occurred, the grade was modified as to that part of the street, and the following resolution was adopted :

"*Resolved,* That the profile map of Sylvan street from Park avenue to Pierrepont avenue, made by          , dated      , 1891, be and the same is hereby adopted."

The street committee at this meeting was directed to see that the changes were duly made in the grade map of Sylvan street and Spring Dell.

Now, upon the evidence here, the conclusion reached is that the profile map of grade of Sylvan street as presented showed a cut of sixteen feet at the highest part of the hill on which prosecutors' property is situated ; that the modification which was then made was that the cut should not be more than eight feet in the highest part of the hill. I am led to conclude that this was the modification agreed on at the meeting of August 3d, 1891. No further action of the council appears to have been taken until the meeting of July 5th, 1892, when a petition was presented under the first section of the statute of 1888 by the owners of one-fourth of the lineal feet of land fronting on Sylvan street, between the avenues named, to change the grade on Sylvan street between Highland Cross and Pierrepont avenue, which is the portion of the street the grade of which is not in question here, and for grading, curbing and guttering said street between Park avenue and Pierrepont avenue, which is the whole street. The clerk was instructed to advertise for objections to be filed on the 18th of July. On July 18th the profile map appears to have been adopted, and an ordinance introduced for the grading, curbing and guttering Sylvan avenue, between Park avenue and Pierrepont avenue, which was laid over and passed at the meeting of August 15th, 1892. On September 6th, 1892, bids for grading Sylvan street were opened, and the contract awarded for the work, and on September 10th, 1892, the contract for the work was executed and the work was proceeded with and

had made some considerable progress when it was interrupted as to that portion of the grading between Passaic and Park avenues by proceedings in the Court of Chancery of this state and finally by this writ.

It will be noticed that the petition for change of grade presented July 5th, 1892, was only to affect that portion of the street between Highland Cross and Pierrepont avenue, leaving the grade on the other portions of the street as theretofore established or adopted ; that is, the grade adopted by the resolution of August 3d, 1891, as ordered modified in accordance with the agreement between the mayor and council and these prosecutors and other property owners.

It is exceedingly doubtful if any grade, before the improvement of the street was commenced, was adopted by resolution or otherwise; that is, any grade of record which can now be identified. There is the resolution of August 3d, 1891, by which a grade with changes ordered to be made was adopted. Besides this there is the profile map of the grade which was said to have been adopted by the mayor and council July 30th, 1888. There is no contention that this shows the grade upon which the improvement is being made, but upon this map there are to be found lead pencil lines indicating quite clearly that a grade of a much less cut through this hill than that fixed by the ink lines on the map was contemplated. The lines in lead pencil would indicate the truth of much of the evidence in this case, that it was agreed on between the mayor and council and the property owners that the grade should be so changed that there should be a cut of only eight feet at the summit of this elevation on the line of this street.

These lead pencil lines occur only on that part of the grade map between Passaic and Park avenues, which is the only part of the street in which the grade is in dispute.

This map bears the endorsement, " This profile map of Sylvan street was adopted by the mayor and council and the grades as shown thereon were established July 30th, 1888."

There was still another map produced, bearing the following endorsement: " This profile and grade map of Sylvan

street was adopted by the mayor and council and the grades as shown thereon were established 3 August, 1891," which endorsement is signed by the mayor and borough clerk. It appears that their signatures were not attached until after this dispute arose.

It also bears the following endorsement: "On petition of property owners change of grade was made between Pierrepont avenue and Highland Cross as indicated by blue lines and figures July 18, 1892," and this endorsement is signed by the mayor and borough clerk. The prosecutors were not of the petitioners for the change of grade between Pierrepont avenue and Highland Cross. The map also has upon it the endorsement of the resolution passed by the mayor and council on October 17th, 1892, which, after reciting that the map had been questioned, adopted it as a grade. This resolution was passed and endorsed after the prosecutors had taken legal action against the proceedings of the mayor and council, and in no manner does it appear that it can have any effect upon the questions discussed in this case.

Upon this map also the lead pencil lines appear on that part of the street over this elevation between Passaic avenue and Park avenue, and on that part only. These lead pencil lines seem to indicate the same lessening of the cut through the hill, from about sixteen feet to about eight feet. On this map the lead pencil lines appear to have been partially erased, but there is sufficient remaining of them to indicate clearly that some one who held possession of it had been intent upon some other grade than that fixed by the ink lines.

From the evidence as matter of record there appears to have been much confusion on the subject of the grade of this street, both on the part of the officials of the borough and the property owners, and from this it is quite difficult to ascertain whether the mayor and council ever adopted any grade for this street by any formal record whatever in relation to that portion of Sylvan street extending over this hill from Passaic to Park avenue. The part on which the grade by which the

work is being performed is complained of, is the highest portion of the street, as has been stated.

These profile maps, however made, show a cut of about sixteen feet at the highest point of this hill. The prosecutors had knowledge of the existence of these maps, or of one or the other of them, as both are similar. It was attempted to adopt one of them in 1888 as the map of the grade of this street, and in the grading of this street through this hill the mayor and council and the contractor are attempting to use this grade; they have used the grade as altered by them, as shown on this map, from Pierrepont avenue to Passaic avenue, the point where the ascent commences.

It is quite clear under the evidence that the map as originally presented at the meeting of August 3d, 1891, did show this grade, but it is equally evident that after protest on the part of the property owners at that meeting a resolution was passed modifying the grade map, and that the committee on streets was instructed to cause these modifications or changes to be made on the map. It is important here to arrive at a conclusion, as nearly as may be, in relation to these changes in the grade map. The map itself, in fact both the maps, now bear on their face clear indications of the discussion in relation to this grade. They are both in evidence, and the conclusion arrived at is that they show a change in the grade on that portion of the street from Passaic avenue to Park avenue, and that very much less along this part of the street than that shown by the ink lines by which the improvement is now being made, and these lead pencil lines would apparently show about one-half the cut shown by the ink lines, or a cut of about eight feet instead of sixteen feet. I now refer to the lead pencil lines on the map. There is no other purpose alleged for their existence on the map, and if this was not the change and modification then made, then there could have been no need of the resolution of change, and it had no effect, for before the resolution was passed the grade on the map was the same grade now being used for the improvement, and the grade against which there was a protest at that time, and the

change of which was by all supposed to have been contemplated by their resolution and their direction to the committee on streets, and from their own minutes, records and maps as they now stand, it would be fair to conclude that these prosecutors were without knowledge that any such grade as the map exhibited originally was contemplated in any improvement, and on·the contrary it is safe to say that their knowledge was that it had been changed at that meeting from a sixteen-feet cut to an eight-feet cut in front of their property.

And reviewing the evidence on this point, it will be seen that a great preponderance of the evidence supports this view.

A careful examination leads to a convincing conclusion that at the meeting of August 3d, 1891, a petition was received from Sylvan street property owners asking that the mayor and council refuse to confirm the grade map made for that street. Objection was made to the heavy cut between Passaic avenue and .the Terrace. This matter came up later under a call for objections to the grade map—various property owners presented their objections and there was much discussion. Finally it was determined to alter the Wise & Watson grade map so as to have an eight-feet cut on the hill, and a five-feet fill at the foot of the hill where Spring Dell intersects Sylvan street. This was finally adopted by the council, and the street committee were directed to see that the alterations were properly made on the grade map.

Some ten or twelve witnesses on the part of the prosecutors swear substantially and circumstantially to these occurrences at that meeting. These witnesses include the borough clerk at that time, the reporters and editors of two newspapers who reported the proceedings of that meeting. They state that this was agreed upon and that the property owners left satisfied. They state many corroborative facts; conversations with the councilmen, mayor and engineer; conversations with the engineer, in which he endeavored to dissuade them from their position about the matter; but the final outcome was that.the change was to be made to an eight-feet cut on the highest part

of the hill, and the map was left with the street committee and the engineer to have the changes made on the map.

Now the evidence on the part of the defendants, instead of contradicting this contention of the prosecutors, corroborates it.

Mr. Danheim, a member of the council, says that the chairman of the street committee drew the lead pencil lines to show compromise grade, and that the cut was to be a cut of eight feet on the top of the hill, and that this was agreed upon.

Mr. Watson, the engineer, testifies that a compromise was made upon an eight-feet cut. John K. Watson, the assistant to the engineer, testifies to directions to . make the cut eight feet; he says the eight feet was to be in front of Mr. Blackwood's.

Mr. Cooper, the mayor, testifies that his recollection is that the grade was to be an eight-feet cut opposite Mrs. Ware's (the prosecutor's) property, with a five-feet fill at Mr. Soly's, near Glen road, and he says, " That is my understanding of the whole thing."

There is some evidence of witnesses in relation to the question of what would be a proper grade, and some differences expressed, but I deem this evidence quite immaterial to the point under discussion.

There can be no hesitation in arriving at the conclusion that the grade settled upon by the council and the property owners, at the meeting of August 3d, 1891, was that the cut should be eight feet at the highest point of the hill opposite the property of the prosecutors, and that the prosecutors rested under the full and honest belief that this was to be the grade until they saw the stakes set for the grade at or near their property ; that immediately they employed counsel, who set about endeavoring to have the correction made by the mayor and council. Not being able to accomplish this, a bill was filed in the Court of Chancery and an order to show cause in that court was obtained for an injunction ; this was dismissed very soon on the ground that there was a remedy at law, and immediately this writ was sued out.

Under all the circumstances of this case the prosecutors had the right to rely upon the changes agreed on between themselves and the mayor and council, and which the proper officials had been directed to make on the map. No proceedings were ever afterwards taken which would call their attention to the fact that any further change would be made on this part of the street; in fact the petition for this improvement heretofore referred to would have a strong tendency to assure them that no further change was to be made on their portion of the street.

The conclusion reached is, that these prosecutors had no knowledge or information of the adoption of any map indicating any such grade as that by which the mayor and council are now making this improvement, nor had they any knowledge or information of the establishment in any manner of any such grade. These prosecutors relied upon the modified grade fixed by agreement at the meeting of August 3d, 1891. They relied upon a state of facts and circumstances which gave them the full assurance against the injury complained of, and which they now seek relief from.

Under these circumstances they are not chargeable with laches such as to bar relief in the premises.

The mayor and council, if they desire so to do, can conform their further action in relation to this improvement to the modified grade, indicated by this opinion, as having been fixed by the agreement made at the meeting of the council of August 3d, 1891, between the borough authorities and these prosecutors, and in accordance with which the grade and profile map were ordered changed. If they thus desire to conform the improvement to such grade, and such conformity signified to this court in some binding form, then the writ of *certiorari* may be dismissed without costs to either party. If this action on the part of the borough authorities be not desirable or satisfactory to them, then the proceedings of the mayor and council certified into this court in this matter, for review, must be set aside and reversed, with costs to the prosecutors.